**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Darnell Crawford, Maudine Crawford,** and **Tracy Crawford,** Joint Trustees for the Heirs and Next of Kin of DelShawn Crawford, deceased;

**Plaintiffs,**

**v.**

**Laura Turner,** individually and in her official capacity as a Minneapolis Police Officer; and

**Chad Meyer,** individually and in his official capacity as a Minneapolis Police Officer;

**Defendants.**

**Case No. 13-CV-2562-DWF-JJK**

**FIRST AMENDED COMPLAINT**

**(JURY TRIAL DEMANDED)**

## INTRODUCTION

1. The ability to safely, calmly, and professionally interact with the public without violence is an intrinsic and basic part of law enforcement. During the events described in this Complaint, Defendants showed a complete lack of these essential skills, a blatant disrespect for the laws of the United States, and an abhorrent disregard for civil rights and human life.

2. In the early morning hours of May 12, 2012, with absolutely no legitimate justification or defense, Defendants Laura Turner and Chad Meyer announced their police presence by spraying gunfire through the front door of a home, narrowly missing a sleeping 4-year-old and killing DelShawn Crawford.

3. On February 6, 2013, the Honorable Denise D. Reilly, Judge of the Fourth Judicial District for the State of Minnesota, appointed Mr. Crawford's mother, Maudine Crawford,

his father, Darnell Crawford, and his former wife and mother of his sons, Tracy Crawford, as Joint Trustees for the purposes of commencing this action.

4. Pursuant to the 4th, 5th, and 14th Amendments of the United States Constitution and Title 42 U.S.C. § 1983, Plaintiffs bring this action against Defendants for violating Mr. Crawford's rights, including procedural due process, the right to be free from unreasonable search and seizure, and the right not to be subjected to excessive and deadly force. Plaintiffs seek compensatory and punitive damages, as well as statutory fees and attorneys fees.

5. Pursuant to Minn. Stat. § 573.02, Plaintiff also brings this action against Defendants for Mr. Crawford's wrongful death. Plaintiffs seek compensatory and punitive damages, as well as statutory fees and attorneys fees.

## JURISDICTION AND VENUE

6. Plaintiffs' claims are based, in part, on Title 42 U.S.C. § 1983. This Court, therefore, has federal question subject matter jurisdiction pursuant to Title 28 U.S.C. §§ 1331 and 1343.

7. Venue in this Court is appropriate pursuant to Title 28 U.S.C. § 1391. Further, the unlawful practices alleged herein occurred within this State and District.

## PARTIES

8. DelShawn Crawford was born on February 25, 1972 in Gary Indiana. At all times relevant to this Complaint, Mr. Crawford was a resident and domiciliary of Minneapolis,

Hennepin County, Minnesota. On May 12, 2012, Mr. Crawford died by homicide when Defendants shot and killed him in Minneapolis, Minnesota.

9. Mr. Crawford is survived by the following heirs and next-of-kin: Mother Maudine Crawford; Father Darnell Crawford, Jr.; Sister Amiel Laverne Rowe; Son D.C.; Son M.C.

10. Mr. Crawford's mother, Maudine Crawford, has been appointed by the Hennepin District Court as a Joint Trustee for the purposes of commencing this action.

11. Mr. Crawford's father, Darnell Crawford, Jr., has been appointed by the Hennepin District Court as a Joint Trustee for the purposes of commencing this action. .

12. Mr. Crawford's former wife, Tracy Crawford, has been appointed by the Hennepin District Court as a Joint Trustee for the purposes of commencing this action. .

13. Upon information and belief, Defendant Laura Turner was and still is a Police Officer for the City of Minneapolis and is a resident and domiciliary of Minnesota.

14. Upon information and belief, Defendant Chad Meyer was and still is a Police Officer for the City of Minneapolis and is a resident and domiciliary of Minnesota.

15. Defendants are "persons" acting, at all times relevant to this Complaint, "under the color of state law" and in the scope of their official duties, as within the meaning of Title 42 U.S.C. § 1983.

## FACTUAL BACKGROUND

16. On May 12, 2012, Delshawn Crawford was spending a "family night" with his girlfriend Brandy Lewis, her children, her children's friends, and cousins of Ms. Lewis. At

approximately 1:30 AM, there were still seven individuals in Ms. Lewis' home at 3017 19th Avenue South, Minneapolis, MN 55407.

17. The individuals in Ms. Lewis' home included her, DelShawn Crawford, Alf Davis (Ms. Lewis' 19 year-old son), R.C. (Ms. Lewis' 13-year-old son), Prince Early (Alf Davis' 19-year-old friend), T.J. (Ms. Lewis' 10-year old cousin), and B.L. (Ms. Lewis' 4-year-old cousin).

18. In the early morning hours, following the family gathering, Mr. Crawford and Ms. Lewis had a verbal argument; Ms. Lewis continued to clean the home while they were arguing.

19. Upon information and belief, a neighboring tenant is alleged to have called police dispatch and reported hearing commotion at Ms. Lewis' residence.

20. During the course of the argument, Mr. Crawford had picked up a knife and was holding it as he continued to talk with Ms. Lewis and Alf Davis.

21. At no time during the course of the conversation did Mr. Crawford threaten anyone; Mr. Crawford never made verbal threats, nor did he motion to threaten anyone with the knife. Mr. Crawford simply held the knife in his hands while he was talking.

22. As Ms. Lewis and Mr. Crawford continued to talk, Lewis told Crawford to put the knife down and to go home and come back when he was sober. Mr. Crawford responded by putting the knife on the dining room table and walking into the living room.

23. For the next fifteen minutes, Ms. Lewis continued to clean the apartment while Mr. Crawford was located in the living room. Sleeping in the couch in the living room was

Ms. Lewis' 4-year-old cousin, B.L.. The verbal argument between Ms. Lewis and Mr. Crawford subsided.

24. Upon information and belief, Defendants then arrived at Ms. Lewis' apartment building and ascended the stairs to the second level, where Ms. Lewis' apartment is one of two apartments at the top of the stairs.

25. Neither Defendants nor anyone else verbally notified the people in the Lewis residence of police presence, nor did anyone knock on the door or signal their presence in any non-verbal manner.

26. In an abhorrently unwarranted and overzealous display of force that proved deadly, and without any warning, notification, or provocation, Defendants announced their presence by shooting through the front door and wall of Ms. Lewis' apartment and simultaneously kicking in the front door.

27. Defendants' gunfire hit Mr. Crawford, had been standing unarmed in the living room for approximately 15 minutes before Defendants arrived and began shooting into the residence. Mr. Crawford posed no threat to the Defendants; nor did he pose a threat to any other persons.

28. Defendants' gunfire narrowly missed 4-year-old B.L., who was still sleeping on the couch as Defendants indiscriminately sprayed gunfire into the home.

29. There is no rational justification for ***any*** level of force used by Defendants, much less lethal force.

30. The moment Defendants began shooting into the apartment and breaking through the door, Ms. Lewis and Alf Davis ran to the back room, where R.C., Prince Early, and T.J. had been playing a game.

31. As Lewis and Davis ran into the back room, the got their very first indication that the people who had just stormed into the home with gunfire were police, as someone finally yelled, “Police, get on the ground!” Lewis, Davis, Early, R.C., and T.J. all dropped to the ground, with their faces towards the floor and their hands up and away from their bodies.

32. Additional officers then entered through a back door and immediately handcuffed R.C., T.J., and Ms. Lewis. Officers then escorted them out the back door of the home.

33. Alf Davis and Prince Early were also placed in handcuffs, but the two were then escorted out the front door of the apartment, where they walked right by Mr. Crawford’s dead body, which they saw lying perpendicular to the front door.

34. Once outside, officers then lined up all the people who were inside Ms. Lewis’ residence, where officers held them for approximately 10 minutes before placing each of person in a separate squad car.

35. Police eventually put the 4-year-old B.L. into the same squad as Ms. Lewis.

36. Police then brought everyone at the Lewis residence to the police department, where Lewis, Davis, and Early were each questioned separately for over 3 hours.

37. At approximately 7:00 AM, officers informed Ms. Lewis that Mr. Crawford had died.

38. Defendants acted deliberately, intentionally, with malice, in bad faith, and with a clear reckless disregard of rights, dignity, and human life as they committed the above-described acts, which resulted in the homicide Mr. Crawford.

39. Defendants' actions have no semblance of legitimate justification or defense; their brutal and horrific use of force so far exceeded the bounds of law and morality that they immediately began fabricating a version of the evening's events in a desperate attempt to account for their actions.

40. As a direct and proximate result of Defendants' conduct, Mr. Crawford lost his life and Plaintiffs and Mr. Crawford's heirs and next-of-kin have suffered extreme emotional distress, pecuniary loss, and the loss of his aide, comfort, companionship, guidance, and protection.

**COUNT 1**

**EXCESSIVE FORCE/UNREASONABLE SEARCH & SEIZURE**

**THE UNITED STATES CONSTITUTION – TITLE 42 U.S.C. § 1983**

41. Plaintiffs incorporate the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

42. Title 42 U.S.C. § 1983 prohibits, *inter alia*, state actors from depriving persons of rights, privileges, or immunities secured by the United States Constitution, including the right to be free from excessive force and unreasonable search and seizure as guaranteed by the Fourth Amendment and incorporated through the Fourteenth Amendment. This right was clearly established at all times relevant to this Complaint.

43. In violation of 42 U.S.C. § 1983, Defendants, acting under the color of state law, deprived Mr. Crawford of rights, privileges and immunities secured by the Constitution by using, and by allowing other Defendants to use, excessive, unreasonable, and deadly force, resulting in Mr. Crawford's wrongful death.

44. Defendants' actions were not objectively reasonable under the Fourth Amendment or for the purposes of qualified immunity under the totality of the circumstances.

45. As a direct and proximate result of Defendants' actions, Plaintiffs, Mr. Crawford, and his heirs and next of kin have been injured, suffering his wrongful death, physical, mental, and emotional pain, discomfort, embarrassment, fear, anxiety, apprehension, sleeplessness, public scorn, a generally diminished sense of personal and family safety, outrage, attorney and investigative fees, and the costs of bringing suit. Further, Plaintiffs and Mr. Crawford's heirs and next of kin have suffered pecuniary and other losses, including but not limited to the loss of his aide, comfort, companionship, guidance, and protection.

46. Defendants, as a result of their outrageous and illegal behavior, are liable to Plaintiffs, Mr. Crawford, and heirs and next for the above-mentioned injuries as well as punitive damages.

47. Total damages suffered are in excess of $75,000, to be further determined at trial.

48. Punitive damages are also properly awardable against defendants and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. § 549.20.

**COUNT 2**

**WRONGFUL DEATH**

**2012 MINN. STAT § 573.02**

49. Plaintiffs incorporate the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

50. Minn. Stat. § 573.02 provides a cause of action for a decedent's estate when death is caused by the wrongful act or omission of any person or corporation.

51. It is well established in Minnesota and Federal common law, statutory law, Constitutional law, police officer protocol, and virtually every known iteration of moral decency, that the use of deadly force should be a last resort and reserved for the direst of circumstances, such as those involving a grave threat of great bodily harm or death.

52. Defendants' use of deadly force, and their allowance of the use of deadly force by others, against Mr. Crawford and the inhabitants of Ms. Lewis' home was extreme, outrageous, and totally unwarranted in light of the circumstances. Their wrongful acts and omissions constitute wrongful conduct resulting in the wrongful death of Mr. Crawford for which Minn. Stat. § 573.02 allows recovery.

53. As a direct and proximate result of Defendants' actions, Plaintiffs, Mr. Crawford, and his heirs and next of kin have been injured, suffering his wrongful death, physical, mental, and emotional pain, discomfort, embarrassment, fear, anxiety, apprehension, sleeplessness, public scorn, a generally diminished sense of personal and family safety, outrage, attorney and investigative fees, and the costs of bringing suit. Further, Plaintiffs and Mr. Crawford's heirs and next of kin have suffered pecuniary and other losses,

including but not limited to the loss of his aide, comfort, companionship, guidance, and protection.

54. Defendants, as a result of their outrageous and illegal behavior, are liable to Plaintiffs, Mr. Crawford, and his heirs and next of kin for the above-mentioned injuries as well as punitive damages.

55. Total damages suffered are in excess of $75,000, to be further determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court:

Enter a judgment in favor of Plaintiffs and against Defendants as follows:

A. An order granting Plaintiff joint and severable judgments against Defendants;

B. An order granting Plaintiff compensatory damages in such amount as jury may determine but not less than $75,000.00;

C. An order granting Plaintiff punitive damages in such amount as jury may determine but not less than $75,000.00;

D. An order for Defendants to pay Plaintiff's costs, interest and attorney fees, as allowed under Title 42 U.S.C. § 1988.

E. An order for Defendants to pay any and all further relief available, such as any relief this Court may consider equitable or appropriate.

***Plaintiffs demand a jury trial.***

Dated: April 22, 2015

**MADIA LAW LLC**

s/ J. Ashwin Madia
J. Ashwin Madia, MN# 0321187
345 Union Plaza
333 Washington Avenue North
Minneapolis, Minnesota 55401
612.349.2723
fax: 612.235.3357
jamadia@madialaw.com
**ATTORNEY FOR PLAINTIFFS**